1

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
PATRICIA N. SYVERSON (203111)
MANFRED P. MUECKE (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone:  619-798-4593
psyverson@bffb.com
mmuecke@bffb.com

2

3

4

5

6

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone:  (602) 274-1100

7

8

9

10

11

*Attorneys for Plaintiff*

12

13

14

**UNITED STATES DISTRICT COURT**

15

**CENTRAL DISTRICT OF CALIFORNIA**

16

17

NATALIYA BORCHENKO, On
Behalf of Herself and All Others
Similarly Situated,

18

19

Plaintiff,

20

v.

21

L'ORÉAL USA, INC., a Delaware
corporation,

22

23

Defendant.

24

25

26

27

28

Case No.:

**CLASS ACTION COMPLAINT FOR:**

VIOLATION OF THE UNFAIR
COMPETITION LAW, Business and
Professions Code §17200 *et seq.*

Plaintiff Nataliya Borchenko brings this action on behalf of herself and all others similarly situated against Defendant L'Oréal USA, Inc., and states:

## NATURE OF ACTION

1.      Throughout the applicable limitations period, Defendant has manufactured, marketed, sold, and distributed several skin care products under its Revitalift® line.   These products include: (1) Anti-Wrinkle + Firming Eye Treatment; (2) Anti-Wrinkle + Firming Face & Neck Moisturizer; (3) Anti-Wrinkle + Firming Day Moisturizer; (4) Anti-Wrinkle + Firming Night Cream Moisturizer; (5) Cicacream; (6) Triple Power Intensive Skin Revitalizer Serum + Moisturizer; (7) Triple Power Day Lotion Moisturizer; (8) Triple Power Deep-Acting Moisturizer; (9) Triple Power Intensive Anti-Aging Overnight Mask; (10) Triple Power Eye Treatment; (11) Triple Power Concentrated Serum Treatment; (12) Triple Power Intensive Anti-Aging Day Cream Moisturizer; (13) Double Lifting Face Treatment; (14) Double Lifting Eye Treatment; (15) Bright Reveal Brightening Peel Pads; (16) Bright Reveal Brightening Day Moisturizer; and (17) Bright Reveal Brightening Dual Overnight Moisturizer (the "Products").[1]   The Products are sold online and in virtually every major food, drug, and mass retail outlet including, but not limited to Walgreens, CVS, Walmart, and Rite Aid.  The Products retail for approximately $18.00-$25.00.

2.      On the front of each and every Product package, where consumers cannot miss it, Defendant represents that the Products will reduce or repair wrinkles.  On the front of the Anti-Wrinkle + Firming Eye Treatment, Anti-Wrinkle + Firming Face & Neck Moisturizer, Anti-Wrinkle + Firming Day Moisturizer, Anti-Wrinkle + Firming Night Cream Moisturizer, Cicacream, Double Lifting Face Treatment, Double Lifting Eye Treatment, and Brightening Dual Overnight

_____

[1] Plaintiff reserves the right to add other products upon completion of discovery.

Moisturizer, Defendant represents that the Products are "Anti-Wrinkle" products. Similarly, Defendant represents on the front of the Triple Power Intensive Skin Revitalizer Serum + Moisturizer that it will "Reduce Lines & Wrinkles" and Defendant represents on the front of the Triple Power Intensive Anti-Aging Overnight Mask, Triple Power Intensive Anti-Aging Day Cream Moisturizer, Brightening Peel Pads, Brightening Day Moisturizer, and Brightening Dual Overnight Moisturizer that the Products will "Reduce Wrinkles." And, Defendant represents on the front of the Triple Power Day Lotion Moisturizer, Triple Power Deep-Acting Moisturizer, Triple Power Eye Treatment, and Triple Power Concentrated Serum Treatment that the Products will "Repair Wrinkles". The Triple Power Day Lotion Moisturizer further represents that it "improve[s]" "coarse wrinkles", while the Double Lifting Eye Treatment represents that it "Helps to reduce wrinkles". These representations are collectively referred to as the "anti-wrinkle representations".

3. On the front of each and every Product package, where consumers cannot miss it, Defendant also represents that the Products will "lift" the skin, by branding them as "Revitalift" products. The front of the Triple Power Eye Treatment further represents that the Product will "Lift Eye Area" and Defendant also represents that the Product will "re-lift[]" skin and "visibly lift[] and firm[] sagging skin around the eye area." The front of the Double Lifting Face Treatment further represents that it is an "Ultra Concentrated Lifting Gel", while the Double Lifting Eye Treatment represents that it is an "Upper Eye Lifting Gel" that will "visibly lift the appearance of eyelids". Similarly, the Triple Power Deep-Acting Moisturizer and Triple Power Concentrated Serum Treatment further represent that they "re-lift[]" skin. These representations are collectively referred to as the "lift representations".

4. On each and every Anti-Wrinkle + Firming Eye Treatment, Anti-

Wrinkle + Firming Face & Neck Moisturizer, Anti-Wrinkle + Firming Day Moisturizer, Anti-Wrinkle + Firming Night Cream Moisturizer, Cicacream, Triple Power Intensive Skin Revitalizer Serum + Moisturizer, Triple Power Deep-Acting Moisturizer, Triple Power Intensive Anti-Aging Overnight Mask, Triple Power Concentrated Serum Treatment, Double Lifting Face Treatment, and Double Lifting Eye Treatment product package, Defendant also represents that the Products will "firm" or "redensify" the skin.  Specifically, on the front of the Anti-Wrinkle + Firming Eye Treatment, Anti-Wrinkle + Firming Face & Neck Moisturizer, Anti-Wrinkle + Firming Day Moisturizer, and Anti-Wrinkle + Firming Night Cream Moisturizer product packages, where consumers cannot miss it, Defendant represents that the Products are "Firming" products that will "firm" skin.  Similarly, on the front of the Cicacream product, where consumers cannot miss it, Defendant represents that the Product will "Firm Skin".  Defendant represents on the front of the Triple Power Intensive Skin Revitalizer Serum + Moisturizer, Triple Power Deep-Acting Moisturizer, Triple Power Intensive Anti-Aging Overnight Mask, and Triple Power Intensive Anti-Aging Day Cream Moisturizer product packages, where consumers cannot miss it, that the Products will "Re-Firm" the skin.  And, Defendant represents on the front of the Triple Power Deep Acting Moisturizer and Triple Power Concentrated Serum Treatment product packages, where consumers cannot miss it, that the Products will "redensify" the skin.  The Anti-Wrinkle + Firming Eye Treatment further represents that it provides "Firmer skin around the eye area" and the Anti-Wrinkle + Firming Face & Neck Moisturizer represents that in 4 weeks, "Firmness noticeably improves".  Similarly, the Triple Power Deep-Acting Moisturizer represents that it "firms and tightens skin" and increases skin elasticity, the Double Lifting Face Treatment represents that it "retighten[s] skin", and the Double Lifting Eye Treatment represents that it "helps to tighten skin above the eyes".  These representations are collectively referred to as the "firming

representations".

5.    Defendant further represents on the Anti-Wrinkle + Firming Eye Treatment, Anti-Wrinkle + Firming Face & Neck Moisturizer, Anti-Wrinkle + Firming Day Moisturizer, and Cicacream product labels that the Products will "repair the skin barrier" and "strengthen[], and repair[] skin barrier" (collectively, the "repair representations").

6.    The anti-wrinkle, lift, firming, and repair representations are collectively referred to as the "skin structural representations" or "unlawful representations".  By means of the skin structural representations, the Products claim to affect the structure of consumers' skin, making the Products "drugs" as defined by California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Cal. Health & Safety Code § 109925(c).

7.    Importantly, the "anti-wrinkle", "lift", and "firming" representations on the front of the Product labels, to which all consumers are necessarily exposed, as well as the repair representations, are stand-alone representations and are not qualified by words such as "appearance" or "look" leading consumers to believe the Products will affect the structure and function of their skin by lifting and firming the skin, thus preventing new wrinkles from forming, and repairing the skin and eliminating existing wrinkles as opposed to temporarily affecting the "appearance" or "look" of the skin and wrinkles.  Depending on the particular Product, Defendant promises skin structural results in anywhere from 1 to 8 weeks.

8.    Cosmetics cannot be marketed as skin structure altering drugs without pre-approval from the FDA through the New Drug Application process unless they conform to a "monograph" for a particular drug category, as established by the FDA's Over-the-Counter (OTC) Drug Review.  Monographs identify approved ingredients for specified uses generally recognized as safe and effective, and not misbranded.  U.S. FOOD & DRUG ADMINISTRATION, Is It a Cosmetic, a Drug,

or Both? (Or Is It Soap?), *available at* https://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm.  Products containing active ingredients that are nonmonograph cannot be marketed to the public without an approved New Drug Application that requires, *inter alia*, that Defendant present evidence that the products are safe and effective for their represented uses.  U.S. FOOD & DRUG ADMINISTRATION, Over-the-Counter (OTC) Drug Monograph Process, *available at* https://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedandapproved/ucm317137.htm.

9.     The active ingredients in the Products do not conform to monographs for wrinkle prevention, elimination, and reduction, or skin lifting, tightening, firming, or repair.  Defendant did not subject the Products to the FDA NDA process and did not obtain pre-approval from the FDA to sell the Products with the skin structural representations.

10.    Thus, even if the skin structural representations are true – on which Plaintiff takes no position – Defendant has been selling and marketing the Products as drugs in violation of the "unlawful" prong of the UCL.

11.    Plaintiff brings this action on behalf of herself and other similarly situated consumers who purchased the Products seeking declaratory and injunctive relief preventing the further unlawful sale of illegal and misbranded drugs until Defendant obtains approved NDAs or removes the unlawful representations which are injurious to the public at large and the removal or approval of which is necessary to prevent future harm to the public at large.  Plaintiff, on behalf of herself and all other similarly situated consumers, also seeks a full refund of the purchase price as the Products were being sold illegally as drugs.  Alternatively, Plaintiff seeks the premium paid for the Products over comparable L'Oreal and competitor cosmetic products that do not make unlawful drug claims.

### JURISDICTION AND VENUE

12.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendant.

13.   This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and do business in California, including this District.  Defendant marketed, promoted, distributed, and sold the Products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

14.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff's claims occurred while she resided in this judicial district.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

### PARTIES

15.   Plaintiff Nataliya Borchenko resides in Sherman Oaks, California. Throughout the relevant period, Plaintiff paid approximately $20.00 to purchase Defendant's Anti-Wrinkle + Firming Eye Treatment; Anti-Wrinkle + Firming Night Cream Moisturizer; Triple Power Eye Treatment; and Double Lifting Eye Treatment Products from various stores in the Sherman Oaks area, including CVS, Rite-Aid, and Target.  Plaintiff read the Product packages and she selected the premium-priced Products instead of less expensive comparable products based on the skin structural representations.  As a result, Plaintiff suffered injury in fact and lost money.  Now that Plaintiff knows the skin structural representations had not received the required FDA approval and the Products were illegally being

sold, Plaintiff has not purchased Defendant's Products again.  However, Plaintiff continues to desire to purchase skin creams that provide anti-wrinkle, lifting, firming, and skin repair benefits.  And, she would purchase Defendant's Products again if the skin structural representations had received FDA approval and were lawfully being made.  Indeed, she regularly visits stores such as CVS, Rite-Aid, and Target, where Defendant's Products are sold, but has been unable to determine the lawfulness of the Product labels currently on the shelves.  As long as Defendant continues to make the skin structural representations as they currently appear, then when presented with Defendant's packaging on any given day, Plaintiff continues to have no way of determining whether the skin structural representations have in fact been approved by the FDA.

16.    Defendant L'Oréal USA, Inc. is a corporation organized and existing under the laws of the State of Delaware. Defendant's headquarters is at 10 Hudson Yards, New York, NY, 10001. Defendant manufactures, distributes, markets, and sells the Products to consumers throughout California.

**FACTUAL ALLEGATIONS**

17.    Defendant's skin structural representations appear prominently and conspicuously on each Product package as shown in Exhibit A, attached hereto.

18.    Importantly, in addition to the skin structural representations, Defendant features "Pro-Retinol" on the front of the Anti-Wrinkle + Firming Eye Treatment, Anti-Wrinkle + Firming Face & Neck Moisturizer, Anti-Wrinkle + Firming Day Moisturizer, Anti-Wrinkle + Firming Night Cream Moisturizer, Double Lifting Face Treatment, and Double Lifting Eye Treatment product labels. Certain products containing certain forms of retinol in certain strengths have been approved by the FDA as drugs.  Defendant's Products, however, have not been approved by the FDA and the form of retinol in the Products does not conform to a

monograph for the represented benefits.   Featuring the "Pro-Retinol" in its Products evidences Defendant's intent to market its Products as drugs.

19.    Further evidencing Defendant's intent to market the Products as drugs is that, unlike the "immediate", and "overnight" cosmetic effects it promises, the structural benefits require longer to take effect.  For example, Defendant promises that its Anti-Wrinkle + Firming Eye Treatment, Anti-Wrinkle + Firming Face & Neck Moisturizer, and Anti-Wrinkle + Firming Day Moisturizer products will "immediately" hydrate the skin (cosmetic claims), while the firming effects require "1 week" or "4 weeks" to take effect.  Similarly, the Anti-Wrinkle + Firming Night Cream Moisturizer promises to make skin feel softer "overnight" (cosmetic claim), while the wrinkle reduction and firming effects require "4 weeks".   And, the Cicacream "immediately" makes skin feel "healthier, softer, smoother, and more supple" and "noticeably more hydrated" (cosmetic claim), while the wrinkle reduction and firming benefits take 2 or 4 weeks.  The Triple Power Intensive Skin Revitalizer Serum + Moisturizer the 2-in-1 Serum + Moisturizer provide moisture and "softer, smoother and more supple" skin on "Day 1" (cosmetic claim), while the firming and wrinkle reducing effects take 2 or 3 days.  The Triple Power Day Lotion Moisturizer "immediately" makes the skin feel soft (cosmetic claim), but the wrinkle reduction effects take 2-8 weeks.   The Triple Power Deep-Acting Moisturizer "immediately" hydrates skin (cosmetic claim), but the firming and elasticity benefits take "4 weeks".   The Triple Power Intensive Anti-Aging Overnight Mask "immediately" makes skin feel "hydrated and supple" (cosmetic claims), but the firming, tightening, lifting, and wrinkle reduction benefits take "4 weeks".  The Triple Power Eye Treatment "immediately" makes skin look brighter (cosmetic claim), but the wrinkle reduction, firming, and lifting effects take "3 weeks".  The Triple Power Concentrated Serum Treatment "immediately" makes complexion look more radiant (cosmetic claim), while the wrinkle reduction

benefits take "4 weeks".  The Triple Power Intensive Anti-Aging Day Cream Moisturizer "immediately" deeply hydrates the skin (cosmetic claim), but the wrinkle reduction benefits take 1 week.  The Brightening Peel Pads "immediately" make skin "brighter" and "more radiant" (cosmetic claims), but the wrinkle reduction benefits take "4 weeks".  The Brightening Day Moisturizer "immediately" makes skin look brighter and more radiant (cosmetic claims), but the wrinkle reduction effects take 1 week.  Finally, the Brightening Dual Overnight Moisturizer makes skin look "fresher" and "more radiant" and hydrates the skin, making it feel "silky soft and more supple" the "next morning" (cosmetic claims), but the wrinkle reduction benefits take 1 week.

20.    Also evidencing Defendant's intent to market the Products as drugs is that Defendant sells other skin care products – including, for example, another less expensive eye cream – that make only cosmetic claims.

21.    Further evidencing Defendant's intent to market the Products as drugs is that Defendant encourages consumers to use the whole line of Revitalift Products, stating in the "Directions" or "How to Use" section of some Product labels: "[f]or best results, use in conjunction with other Revitalift products", and listing out specific Products to use in the "Your Recommended Regimen" section of some Product labels.

22.    An over-the-counter face cream or moisturizer can be a drug, a cosmetic, or a combination of both.  21 U.S.C. § 359 (the categories of "drug" and "cosmetic" are not mutually exclusive).

23.    The federal Food, Drug, and Cosmetics Act ("FDCA") (21 U.S.C. §§301, *et seq.*) defines cosmetics as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body ... for cleansing, beautifying, promoting attractiveness, or altering the appearance."  21 U.S.C. §321(i).  The Products are cosmetics.

24.     A cosmetic is **also** a drug if it is "intended to affect the structure or any function of the body of man".  21 U.S.C. § 321(g)(1).

25.     California's Sherman Law (California's Health & Safety Code §§ 109875, *et seq.*) parallels the FDCA in material part and adopts all nonprescription drug regulations.

26.     Like the FDCA, the Sherman Law defines a drug as "Any article other than food, that is used or intended to affect the structure or any function of the body of human beings."  Cal. Health & Safety Code § 109925(c).

27.     Since at least 2012 and repeatedly thereafter, and as recently as February 22, 2018, the FDA has made clear that any representation that a product will prevent or remove wrinkles – such as the anti-wrinkle representations on the Product labels – is a drug claim.  Unlike purely cosmetic claims that promise to alter the appearance of the user in a superficial way for a short period of time (e.g., hydrate, moisturize, improve appearance), drug claims – like the anti-wrinkle representations – promise a material, lasting effect (e.g., "anti" meaning prevent wrinkles as well as "reduce" existing wrinkles). As such, the FDA, in its industry publications, explains that it has found that products "intended to affect the structure or function of the body, such as the skin are drugs … even if they affect the appearance.  So, if a product is intended, for example, *to remove wrinkles* or increase the skin's production of collagen, it's a drug or a medical device."  Wrinkle Treatments and Other Anti-aging Products, *available at* http://www.fda.gov/Cosmetics/ProductsIngredients/Products/ucm388826.htm (emphasis added).  And, consistent with its position that anti-wrinkle claims are drug claims, the FDA has sent numerous warning letters to product manufacturers making such claims without FDA approval or pursuant to an established monograph.  *See, e.g.*, FDA's May 26, 2017 letter to Star Health & Beauty, LLC, *available at*

https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2017/ucm563230
.htm ("Stimulate … reduction of deep wrinkles" and "reduces wrinkles" indicate
that products are drugs); FDA's August 29, 2016 letter to ZO Skin Health Group,
LLC, *available at*
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm521019.htm
("reduce wrinkle depth" indicates product is a drug); FDA's April 14, 2016 letter to
Hollywood Skincare International, Inc. *available at*
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm504411.htm
("removes wrinkles instantly" indicates product is a drug"); FDA's October 5, 2012
letter to Bioque Technologies, *available at*
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323767.htm
("[A]chieve ... a 37% reduction in fine lines and wrinkles" and "repairing existing
wrinkles" indicate that products are drugs); FDA's October 5, 2012 letter to Avon
Products, Inc., *available at*
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323738.htm
("help dramatically reverse visible wrinkles" indicates that product is a drug); and
FDA's September 7, 2012 letter to Lancome, USA, *available at*
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm318809.htm
("See significant deep wrinkle reduction in … skin" indicates that product is a
drug).

28.    The FDA has also warned that representations claiming that a product
will "lift" the skin – such as the lift representations on Defendant's Products – are
drug claims.    *See, e.g.*, FDA's Feb 12, 2015 letter to Strivectin Operating
Company, *available at*
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm436692.htm
("[n]ow even more tightening, lifting …." and "providing noticeable lift and
resistance to gravity" indicate neck cream is a drug).

29.     The FDA has also warned that representations claiming that a product will "tighten" or "firm" the skin – such as the firming representations on Defendant's Products – are drug claims.  *See, e.g.*, FDA's Feb 12, 2015 letter to Strivectin Operating Company, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm436692.htm ("[n]ow even more tightening, lifting …." indicates neck cream is a drug); FDA's October 5, 2012 letter to Avon Products, Inc., *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323738.htm ("[H]elp tighten the connections between skin's layers" indicates face cream is a drug); FDA's October 5, 2012 letter to Bioque Technologies, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323767.htm ("With regular use and in as little as four weeks, achieve a 42% increase in skin's firmness" indicates skin cream is a drug).

30.     And, since at least 2012 and repeatedly thereafter, and as recently as August 10, 2017, the FDA has made clear that any representation that a product will repair the skin – such as the repair representations on the Product labels – is a drug claim.  *See, e.g.*, FDA's June 15, 2017 letter to Soapwalla Inc., *available at* https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2017/ucm564189.htm ("repair[s] tissue damage" indicates product is a drug); FDA's May 26, 2017 letter to Star Health & Beauty, LLC, *available at* https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2017/ucm563230.htm (representations that products "repair skin damage", "help[] cells to renew themselves", and contain "skin repairer" ingredients indicate products are drugs); FDA's October 18, 2016 letter to PhytoCeuticals, Inc., *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm525938.htm (representations that products "help with tissue repair", "repair[] skin tissue", "assist[] in skin regeneration", and "accelerate[] cell renewal"  indicate that

products are drugs); FDA's August 29, 2016 letter to ZO Skin Health Group, LLC, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm521019.htm ("Helps support skin's natural mechanism to repair damage" indicates that products are drugs); FDA's July 15, 2016 letter to Annmarie Gianni Skin Care, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm512070.htm (a "new way for your skin to … repair itself" indicates that product is a drug); FDA's July 20, 2016 letter to Finally Pure, LLC, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm515125.htm ("Promotes skin repair and cell regeneration" indicates that product is a drug); FDA's July 21, 2016 letter to La Bella Figura, LLC, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2016/ucm518518.htm (aids in "repairing skin" indicates that product is a drug); FDA's December 3, 2015 letter to Dr. Brandt Skincare, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm476560.htm ("[R]epairs damaged skin" indicates that product is a drug); FDA's October 5, 2012 letter to Avon Products, Inc., *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323738.htm ("helps reactivate skin's repair process" indicate that product is a drug); FDA's October 5, 2012 letter to Bioque Technologies, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm323767.htm ("Damaged skin cells repair themselves", "Fuel rebuilding of skin structure", and "regeneration of skin cells" indicate products are drugs); FDA's September 21, 2012 letter to Andes Natural Skin Care, LLC, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm321094.htm ("repairs sun damaged tissue at the cellular level" and "repair of everyday and

accumulated damage" indicate products are drugs); and FDA's September 21, 2012 letter to Janson-Beckett, *available at* www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm321111.htm ("helps repair aged skin", "helps repair past damage", and "helps to protect against and repair … skin damage" indicate products are drugs).

31.     As the foregoing FDA publication and warning letters demonstrate, the FDA requires manufacturers making identical or substantially similar structural skin representations as Defendant to submit evidence of safety and effectiveness and obtain an approved NDA prior to sale as required by 21 U.S.C. §§ 321(p) and 355(a).  *See also* Cal. Health & Safety Code §§ 109980(a) and 111550.

32.     Integral to the NDA process is demonstrating that the products are generally recognized as safe for their intended uses – here, wrinkle prevention, removal, and reduction, and skin lifting, tightening, firming, and repair.  *See* FDA, Over-the-Counter (OTC) Drug Monograph Process, *available at* http://www.fda.gov/drugs/developmentapprovalprocess/howdrugsaredevelopedand approved/ucm317137.htm; FDA, How Drugs are Developed and Approved, *available at* www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandAp proved/ucm2007006.htm (it is the responsibility of the company seeking to market a drug to test it and submit evidence that it is safe and effective).  By failing to have its Products screened and approved for safety, Defendant is putting consumers at risk of adverse reactions and other ill effects particularly since some of the Products are to be applied to the sensitive eye area which is readily susceptible to infection.

33.     By making the unlawful representations Defendant is also able to charge a substantial premium for its Products over what it and its competitors charge for similar cosmetic products which, for example, claim only to moisturize and visibly improve the skin's appearance or look and do not make the unlawful

drug claims. Consequently, California consumers – like Plaintiff – are purchasing premium priced unlawful drugs not deemed to be safe or effective for preventing, removing, and reducing wrinkles, or skin lifting, tightening, firming, and repair as represented, rendering them valueless or, at a minimum, overpriced.

34. For all these reasons, Defendant should be enjoined from selling the Products with the unlawful skin structural representations until Defendant obtains an approved NDA or removes the drug claims which are injurious to the public at large and Plaintiff and the Class should be refunded their money or, at a minimum, the premium they paid to purchase the Products.

**CLASS DEFINITION AND ALLEGATIONS**

35. Plaintiff brings this action on behalf of herself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All California consumers who within the applicable statute of limitations period until the date notice is disseminated, purchased the Products.

> Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased the Products for the purpose of resale.

36. **Numerosity**. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

37. **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant's alleged conduct is unlawful and constitutes violations of the laws asserted; and

(b)     whether Plaintiff and Class members are entitled to appropriate remedies, including restitution and injunctive relief.

38.     **Typicality.**  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above.  Plaintiff is also advancing the same claims and legal theories on behalf of herself and all Class members.

39.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

40.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the

circumstances here.

41.     Plaintiff seeks injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described and requiring Defendant to provide full restitution to Plaintiff and the Class members.

42.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members.

43.     Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to purchase products not lawfully being sold and not recognized as safe.

## COUNT I
### Violation of Business & Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

44.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

45.     Plaintiff brings this claim individually and on behalf of the Class.

46.     The Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful" business act or practice.

47.     As alleged herein, Defendant engaged in and continues to engage in illegal conduct by unlawfully making skin structural representations about the Products, rendering them drugs, without monographs for the active ingredients and without obtaining required FDA approval through the NDA process.  Defendant committed unlawful business practices by violating California's Health & Safety Code §§ 109875 *et seq.* and California's Sherman Food, Drug and Cosmetic Law, which materially adopts the relevant provisions of the Food Drug and Cosmetic Act.  Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to

this date.   Plaintiff and all Class members were exposed to the unlawful skin structural representations at the point of purchase.

48.   As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she saw and read the skin structural representations, purchased the Anti-Wrinkle + Firming Eye Treatment, Anti-Wrinkle + Firming Night Cream Moisturizer, Triple Power Eye Treatment, and Double Lifting Eye Treatment Products based on the skin structural representations, and she would not have done so but for Defendant's skin structural representations which she now knows were unlawful.   In addition, but for Defendant's illegal conduct, the Products, including those that Plaintiff purchased, would not have been on the market as anti-wrinkle, lifting, firming/tightening, and repair products.

49.   The NDA process is intended to ensure that if the consuming public (e.g., Plaintiff) are sold a product that is a drug as defined under the FDA law and regulations that is not generally recognized as safe and effective under an approved monograph, it will have been put through the rigorous NDA process to ensure that it is safe and effective.

50.   The UCL unlawful prong is intended to hold defendants who engage in unlawful conduct accountable for their violations by, among other things, paying full compensation to consumers who have purchased such illegally sold products that, by virtue of being banned from sale to the public, are valueless or, at a minimum, overpriced.

51.   Plaintiff and the Class members are entitled to the monies Defendant wrongfully obtained in the amount of the full purchase price or, at a minimum, the premium they paid for the Products.

52.   Plaintiff, on behalf of herself and all similarly situated consumers, seeks restitution of all money paid for Defendant's illegally sold Products or, at a

minimum, the premium paid for the Products, consistent with Business & Professions Code § 17203.

53. Plaintiff also seeks, on behalf of herself, all similarly situated consumers and the public at large, declaratory relief and an injunction to enjoin and prevent Defendant from engaging in the acts described, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

//

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Issuing an order declaring that Defendant is in violation of the UCL;

C. Enjoining Defendant's conduct;

D. Awarding appropriate restitution to Plaintiff and the proposed Class members;

E. Awarding Plaintiff reasonable attorneys' fees and expenses pursuant to Cal. C.C.P. § 1021.5; and

F. Awarding such other and further relief as this Court may deem just and proper.

Dated: February 26, 2019  BONNETT, FAIRBOURN, FRIEDMAN
          & BALINT, P.C.

PATRICIA N. SYVERSON (203111)
MANFRED P. MUECKE (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 798-4593
mmuecke@bffb.com
psyverson@bffb.com

BONNETT, FAIRBOURN, FRIEDMAN &
BALINT, P.C.
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To Be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone:  (602) 274-1100

LAW OFFICES OF DAVID N. LAKE,
A Professional Corporation
David N. Lake, CA State Bar No. 180775
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 479-9990
david@lakelawpc.com

*Attorneys for Plaintiff*